**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HELEN HUNTER AND | : | |
| WILLIAM HUNTER, | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 08-879 |
| | : | |
| STERLING BANK, et al., | : | |
| Defendants. | : | |

**November _13th_, 2008**                                    **Anita B. Brody, J.**

## MEMORANDUM AND ORDER

### I.  INTRODUCTION

On February 21, 2008, Plaintiffs Helen Hunter and William Hunter ("the Hunters")
brought this action against Defendants Sterling Bank ("Sterling Bank"), W.G. Osborne
Construction ("Osborne Construction"), William G. Osborne ("Osborne"), The Title Company
of New Jersey ("Title Company"), and Interstate Construction Funding, Inc. ("Interstate").  The
Hunters assert the following six claims: conversion, breach of fiduciary duty, negligence (Title
Company, Interstate, and Sterling Bank only), breach of contract, detrimental reliance, and
equitable relief.  On April 10, 2008, Title Company moved to dismiss all claims in the Hunters'
complaint except breach of contract under Federal Rule of Civil Procedure 12 (b)(6).  On April
17, 2008, Interstate moved under Rule 12(b)(6) to dismiss the Hunters' entire complaint.

### II.  FACTUAL BACKGROUND

In 2003, the Hunters purchased a duplex at 123 East Rosemary Road in Wildwood Crest,
New Jersey ("the Premises").  On May 18, 2005, they entered into an agreement titled Joint
Venture Agreement with Osborne Construction and Osborne.  The Joint Venture Agreement

provided that Osborne would be added to the title of the Premises and that Osborne Construction would renovate the Premises to create two townhouses with the addresses 121 and 123 East Rosemary Road.  After the construction, pursuant to the Joint Venture Agreement, the Hunters would take title to and possession of 123 East Rosemary Road, and Osborne Construction would take title to 121 East Rosemary Road.

According to the complaint, the Hunters needed a construction loan to complete the construction.  In January 2006, the following documents were issued in connection with the loan from Sterling Bank.  The "Construction Loan Commitment" ("Loan Commitment") provided that the proceeds from the $950,000.00 loan would be disbursed on an "inspection draw basis" and would only be used for construction of the Premises.  The "Loan Closing Instructions" ("Instructions"), stated that "the initial draw is $302,000," intended to payoff the existing mortgage, and that the remaining funds could not be applied to anything other than construction of the Premises without consent from Interstate or Sterling Bank.  The "Construction Loan and Security Agreement" ("Construction Loan Agreement"), provided that Sterling Bank would provide funds in accordance with a "Construction Loan Schedule" ("Schedule") but would not be obliged to advance funds until Sterling Bank received a satisfactory inspection report "from its own inspector."

According to the Schedule, Title Company was to disburse the loan proceeds to Osborne Construction and Osborne in stages pursuant to certifications and inspections conducted by Sterling Bank and/or Interstate on Sterling Bank's behalf.  Plaintiff alleges that under the Schedule, Title Company was supposed to disburse the loan in stages to ensure that periodic inspections by Sterling and/or Interstate revealed enough progress to justify additional funds. Each disbursement also required "title bring downs" by Title Company to certify that no liens

had been placed on the property.  The Hunters contend that Interstate and Title Company agreed that Title Company would obtain the Hunters' signatures before any checks were disbursed to Osborne.

The Hunters allege that Interstate, Title Company, and Sterling Bank disbursed the loans "in an inappropriate, untimely, and premature fashion," and because of this the loan proceeds were not applied appropriately to the construction of the Premises.  The Hunters claim that Osborne and Osborne Construction violated the Joint Venture Agreement by using the loan proceeds for personal gain.

On February 1, 2008, Sterling Bank informed the Hunters that they were in default on the construction loan and that Sterling Bank intended to foreclose the Premises.   Construction of the Premises remains incomplete and the property cannot be issued a Certificate of Occupancy, precluding a potential buyer from receiving a residential mortgage.  The Hunters argue that failure to disburse the funds properly resulted in depleted funds and unfinished construction. The Hunters' seek damages for the loss in value of their property, attorney fees, advance interest payments on the loan totaling $20,000, and another advance payment of $20,000 made in an attempt to complete the construction.

**III.  LEGAL STANDARD**

According to Fed. R. Civ. P. 12(b)(6), a court must grant a motion to dismiss if the plaintiff fails "to state a claim upon which relief can be granted."  In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true the well-pleaded allegations of the complaint and draw all reasonable inferences in the plaintiff's favor.  Brown v. Card Serv. Ctr., 464 F.3d 450, 452 (3d Cir. 2006).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the

grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (internal quotations omitted).

## IV.  DISCUSSION

The counts against Title Company and Interstate stem from the Hunters' general allegation that the construction loan funds were improperly disbursed.  The Hunters allege that Interstate did not perform its duty to inspect the Premises and approve the disbursements in accordance with the Schedule.  The Hunters contend that Title Company and Interstate failed to honor an agreement to ensure that the Hunters' signatures were on every authorization for disbursement.

### A. Count IV: Breach of Contract

Interstate moved to dismiss Count IV that alleges Breach of Contract.  "To state a claim for breach of contract, a plaintiff must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007). The Hunters allege that Interstate breached the Schedule by allowing loan proceeds to be disbursed in an "inappropriate, untimely and premature fashion."  Specifically, the Hunters contend that Interstate breached the Schedule by allowing disbursements of funds without first obtaining the Hunters' signatures, as previously agreed.  At this stage, the Hunters have presented enough information to state a claim for breach of contract against Interstate. Therefore, Interstate's Motion to Dismiss Count IV is denied.

B.  Count I: Conversion

Interstate and Title Company move to dismiss Count I that alleges Conversion.  Under New Jersey Law[1], the elements of conversion are "(1) the existence of property, (2) the right to immediate possession thereof belonging to plaintiff, and (3) the wrongful interference with that right by defendant." Corestar Int'l Pte, Ltd. v. LPB Commc'n, 513 F.Supp 2d 107, 127 (D.N.J. 2007).  "[C]onversion consists of the wrongful exercise of dominion and control over the property of another in a manner inconsistent with that other's rights."  Life Ins. Co. v. Snyder, 358 A.2d 859, 862 (N.J. Dist. Ct. 1976) (citing Mueller v. Technical Devices Corp., 84 A.2d 620 (N.J. 1951); Prosser, Law of Torts (3 ed.1964), § 15 at 79).  The plaintiff's right to immediate possession of the property is essential to a claim of conversion.  See Corestar, 513 F.Supp. 2d at 127 (holding that buyer of radios, despite having a right to breach of contract damages, did not have an immediate right to possession of the down payment money, thereby precluding a claim for conversion of that money); Commc'ns. Programming, Inc. v. Summit Mfg., Inc., 1998 WL 329265 at *6 (D.N.J. June 16, 1998) (holding that failure to pay commission is not conversion as plaintiff did not have an immediate right to possession of the commission).

The Hunters have not stated a claim for conversion because the complaint does not support their right to immediate possession of the funds, nor have they alleged that Interstate or Title Company exercised dominion or control over the funds.  The Hunters maintain that they had a right to immediate possession of the funds because they were responsible for repaying the loan to Sterling Bank.  Furthermore, the Hunters "could have used said funds on an immediate basis by instructing that they be returned to Sterling Bank." Answer to Title Company's Motion

_____

[1] New Jersey law governs this action as the Premises were located in New Jersey and all transactions took place in New Jersey.  The parties do not contest the application of New Jersey law.

to Dismiss at 2.   The Hunters did not have a right to immediate possession over the funds - the funds could either be disbursed to Osborne or returned to Sterling Bank.  In fact, the Hunters lacked *any* right to possession over the funds; the loan was approved only as a construction loan. Furthermore, the complaint does not indicate that either Interstate or Title Company had dominion and control, or authorized ownership, over the funds.  Interstate was merely responsible for inspections and the Hunters do not allege that Interstate ever had control over the funds.  The Hunters contend that Title Company was responsible for performing title bring down searches for each disbursement and disbursing the funds from Sterling Bank to Osborne if approved by Sterling Bank and/or Interstate.   There is nothing in the complaint to support a claim that either Title Company or Interstate authorized ownership over the funds in a manner that interfered with the Hunter's right to immediate possession (a right that was not sufficiently alleged, as explained above).  Therefore, Count I is dismissed as to both Title Company and Interstate.

C.  Count II: Breach of Fiduciary Duty

Interstate and Title Company move to dismiss Count II that alleges Breach of Fiduciary Duty.  Under New Jersey law, a fiduciary relationship exists when one party is "under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship." F.G. v. MacDonell, 696 A.2d 697, 704 (N.J. 1997) (citing Restatement (Second) of Torts, § 874 (1979)).  All relationships where parties work together are not fiduciary relationships.  The basis of a fiduciary relationship is that one party places trust and confidence in a dominant or superior party to act in the first party's best interest.  Id.  Fiduciary relationships typically do not exist where independence is required for the dominant party to satisfy its responsibilities .  In re Cendant Corp. Sec. Litig., 139 F.Supp.2d 585, 609 (D.N.J. 2001).   A fiduciary relationship is

generally not present in an arms-length transaction, such as in creditor-borrower relationships. United Jersey Bank v. Kensey, 704 A.2d 38, 45 (N.J. Super. Ct. App. Div. 1997).

The complaint does not support the allegation that Interstate or Title Company had a fiduciary relationship with the Hunters.  The Hunters state that Title Company and Interstate "had fiduciary duties to the Hunters arising from their relationships with the Hunters." (Complaint, ¶ 24).   The Hunters also allege that the payments "were disbursed by Title Company and/or approved by Interstate on behalf of Sterling Bank . . . for the benefits of the Hunters who would thus be assured that the Construction Loan disbursements were being properly made . . . ."  (Complaint, ¶ 17). Interstate was included in the Schedule and the Instructions as an entity that might inspect the Premises on behalf of Sterling Bank prior to loan disbursement.  Interstate and the Hunters were parties to an "arms-length transaction" where Interstate had a duty to inspect the Premises properly and to report these findings.  Nothing in the complaint indicates that the Hunters placed trust and confidence in Interstate, or that Interstate was a dominant party.  Similarly, Title Company's role was to ensure that no liens were on the Premises prior to disbursement, and to disburse the funds to Osborne as directed by Sterling Bank. The Hunters do not allege that they placed any special trust or confidence in Title Company or Interstate, nor do they contend that they sought any advice from either entity. There are no allegations that the Hunters ever had any communication with Interstate or Title Company.  Therefore, Count II is dismissed as to both Title Company and Interstate.

D.  Count III: Negligence

Interstate and Title move to dismiss Count III that alleges Negligence.  To sustain a cause of action for negligence, a plaintiff must show that the defendant breached a duty of care and that the plaintiff suffered legally cognizable harm.  Brunson v. Affinity Federal Credit Union,

7

954 A.2d 550, 560 (N.J.Super.Ct. App. Div. 2008).   This duty of care derives from each

person's responsibility to avoid an unreasonable risk of harm to others.  Id.  Barring an

independent duty owed by a defendant (aside from contractual duties) a plaintiff cannot seek tort

remedies relating to a breach of contract.  Int'l Minerals and Mining Corp. v. Citicorp North

Am., Inc. 736 F.Supp 587, 596 (D.N.J. 19910); see also Saltiel v. GSI Consultants, Inc., 788

A.2d 268, 280 (N.J. 2002)  ("[u]nder New Jersey law, a tort remedy does not arise from a

contractual relationship unless the breaching party owes an independent duty imposed by law.").

     Furthermore, under New Jersey law, the economic loss doctrine "bars a plaintiff from

recovering purely economic losses suffered as a result of a defendant's negligent or otherwise

tortious behavior, absent proof that the defendant's conduct caused actual physical harm to a

plaintiff or his property."  Titan Stone, Tile & Masonry, Inc. v. Hunt Construction Group, Inc.

No. 50-3362, 2007 WL 174710 slip op. at *3 (D.N.J. Jan 22, 2007) (citing Public Serv. Enter.

Group, Inc. V. Philadelphia Elec. Co., 722 F.Supp. 184, 193 (D.N.J. 1989)).  This doctrine

"prohibits plaintiffs from recovering in tort economic losses to which their entitlement only

flows from a contract."  Id. (citations omitted).  It is a "boundary between tort and contract

liability for parties in privity."  Public Serv., 722 F.Supp. at 193.  Though predominantly used in

product liability cases, in New Jersey this doctrine has been upheld to apply to contracts for

services.  Titan Stone, 2007 WL 174710 at *3 (citations omitted); see also Saltiel, 788 A.2d at

280 ("[w]hen a company agrees to render a service or sell a product, a contract normally will

define the scope of the parties' specific obligations.").

     The economic loss doctrine may bar the Hunters from seeking damages under tort if Title

Company and Interstate's respective duties emanate from contractual relationships.  It remains

unclear at this stage in the litigation, however, whether there was a valid contractual relationship

between the Hunters and Interstate or the Hunters and Title Company.  Therefore, both parties' Motions to Dismiss Count III are denied.

D.  Count V: Detrimental Reliance

Interstate and Title Company move to dismiss Count V that alleges Detrimental Reliance. The Hunters' cause of action for detrimental reliance is brought under the Restatement (Second) of Contracts, which states that: "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires."  This section of the Restatement is often called "promissory estoppel."  To state a claim for promissory estoppel, a plaintiff must establish four elements: "(1) a clear and definite promise by the promisor; (2) the promise must be made with the expectation that the promisee will rely thereon; (3) the promisee must in fact reasonably rely on the promise; and (4) detriment of a definite and substantial nature must be incurred in reliance on the promise."  Madison Fin., LLC v. Hunts Point Co-op Mkt., 2008 WL 724362, at *13 (D.N.J. March 17, 2008) (citing The Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank, 395 A.2d 222, 230 (N.J. Super Ct. App.Div.1978)).

The Hunters allege that Title Company and Interstate "agreed" to obtain the Hunters' signatures prior to any loan proceed disbursements. The Hunters do not allege a "clear and definite promise," nor do they allege that any promise was made by Title Company or Interstate with the expectation that the Hunters would rely on it.  Thus, the complaint does not support a cause of action for promissory estoppel.  Therefore, Count V is dismissed as to Title Company and Interstate.

E.  Count VII: Equitable Relief

The Hunters do not contest that Count VI, equitable relief, should be dismissed as against the Title Company and Interstate.  Therefore, Count VI is dismissed as to Title Company and Interstate.

ORDER

**AND NOW**, this __13th__ day of November, 2008 it is **ORDERED** that:

• Title Company of New Jersey's Motion to Partially Dismiss the Complaint (Doc. #16) is **GRANTED** with respect to Count I (Conversion), Count II (Breach of Fiduciary Duty), Count V (Detrimental Reliance), and Count VI (Equitable Relief).

• Title Company of New Jersey's Motion to Partially Dismiss the Complaint (Doc. #16)  is **DENIED** with respect to Count III (Negligence).

• Interstate Construction Funding, Inc.'s Motion to Dismiss the Complaint (Doc. #19) is **GRANTED** with respect to Count I (Conversion), Count II (Breach of Fiduciary Duty), Count V (Detrimental Reliance), and Count VI (Equitable Relief).

• Interstate Construction Funding Inc.'s Motion to Dismiss the Complaint (Doc. #19) is **DENIED** with respect to Count III (Negligence) and Count IV (Breach of Contract).

s/Anita B. Brody

_____

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:   Copies **MAILED** on _____ to: